**In re Jeffrey JANKOWSKI, Debtor.**

**No. 8:06–BK–3556–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 2007.

Marshall G. Reissman, Law Offices of Marshall G. Reissman, St. Petersburg, FL, Alan Summers–Powell, The Law Firm of Alan Powell, P.A., Palm Harbor, FL, for Debtor.

**ORDER ON (1) APPLICATION FOR ADMINISTRATIVE FEES (QUANTUM MERUIT COMPENSATION FOR CHAPTER 7 TRUSTEE); (2) APPLICATION AND SUPPLEMENTAL APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES BY COUNSEL FOR TRUSTEE; AND (3) FORMER DEBTOR'S MOTION FOR QUANTUM MERUIT FEES INCURRED IN OPPOSITION TO THE FEE APPLICATIONS OF TRUSTEE AND TRUSTEE'S COUNSEL**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the (1) Application for Administrative Fees (Quantum Meruit Compensation for Chapter 7 Trustee); (2) the Application and Supplemental Application for Allowance of Compensation and Reimbursement of Expenses by Counsel for Trustee; and (3) the Former Debtor's Motion for Quantum Meruit Fees Incurred in Opposition to the Fee Applications of Trustee and Trustee's Counsel.

The Debtor, Jeffrey Jankowski, filed Objections and Supplemental Objections to the Application for Compensation of the Chapter 7 Trustee, Andrea P. Bauman, and Application for Compensation of the Trustee's attorney, Herbert R. Donica.

Additionally, the Trustee filed a Motion to Strike the Debtor's Motion for Quantum Meruit Fees, which will be treated as a response and objection to the Motion.

## Contents

I. Background ............................................... 537
 A. The Applications ...................................... 537
 1. The Trustee's Application ....................... 537
 2. Donica's Application and Supplemental Application ..... 538
 3. The Debtor's Motion for Quantum Meruit Fees ........ 539
 B. The Objections ....................................... 539

II. Discussion ............................................. 539
 A. Professional fees under § 330 ........................ 539
 B. Applying the standard in this case ................... 541
 1. The Trustee's duties ............................ 541
 2. Investigating the Debtor's financial affairs ..... 542
 3. Opposing the Debtor's conversion or dismissal .... 543
 C. The amount of compensation awarded .................. 545
 1. The Trustee ..................................... 545
 2. Donica ......................................... 545
 D. The Debtor's Motion .................................. 546

III. Conclusion ...................................................................546

### Background

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on July 17, 2006. Andrea P. Bauman was appointed as the Trustee in the case.

On August 17, 2006, the Trustee conducted the § 341 meeting of creditors in the case.

On August 21, 2006, the Trustee filed an Application to employ Herbert R. Donica (Donica) as her attorney. (Doc. 8). The Application was subsequently approved, effective as of August 21, 2006. (Doc. 63).

On August 22 and August 23, the Trustee, through counsel, filed an Objection to the Debtor's Claim of Exemptions, a Motion to Sell the Debtor's nonexempt 1997 Rinker 266 boat, and a Complaint against the Debtor for Turnover of Property and for Injunctive Relief. (Docs.11, 12, Adv. Pro.06–374).

On August 24, 2006, the Debtor filed a Notice of Conversion of Chapter 7 to Chapter 13 Case. (Doc. 18).

On the same date, the Trustee filed an Emergency Motion to Convert Case to Chapter 7. (Doc. 19).

On August 27 and August 28, the Debtor filed an Amended Schedule I, an Amended Schedule J, and an Amended Statement of Financial Affairs. (Docs.25, 26, 28).

On September 11, 2006, the Chapter 7 case was converted to a case under Chapter 13 pursuant to the Debtor's Notice of Conversion. (Docs.34, 35).

On September 12, 2006, the day after the conversion, the Debtor filed an Emergency Motion to Dismiss the Chapter 13 case. (Doc. 37). He also filed Amended Schedules and an Amended Statement of Current Monthly Income and Means Test Calculation. (Doc. 39).

On September 18, 2006, the Debtor's estranged wife, Dawn Jankowski, filed a Motion to Dismiss Bankruptcy Case, with Prejudice. (Doc. 53).

On October 16, 2006, the Court entered an Order on the Motions to dismiss the Chapter 13 case filed by the Debtor and his estranged wife. (Doc. 65). In accordance with the Order, the Debtor's bankruptcy case was dismissed, without prejudice. The Order further provided that the Court retained jurisdiction, post-dismissal, "to determine the fees and costs that may be due to the Chapter 7 Trustee and her counsel and to enter appropriate orders thereon." (Doc. 65).

### A. The Applications

Three requests are before the Court for consideration: an Application for compensation by the Trustee, an Application for compensation by the Trustee's attorney, and a Motion for quantum meruit fees by the Debtor.

### 1. The Trustee's Application

In her Application, the Trustee contends that she devoted 23.6 hours to this case from August 15, 2006, to October 5, 2006, at the rate of $200.00 per hour, for a total fee request in the amount of $4,720.00. (Doc. 66).

The Trustee's time records are attached as Exhibit A to the Application. The time records include the date of each service performed by the Trustee, the amount of time spent on each service, and a description of each service.

The time records reflect that the services provided by the Trustee include evaluating the condition and value of the boat scheduled by the Debtor, conducting the section 341 meeting of creditors, obtaining

and reviewing copies of the Debtor's tax returns and tax transcripts, attending the hearing on the Debtor's Motion to convert to Chapter 13, evaluating the exemptions claimed by the Debtor and reviewing her objection, and attending the hearing on the Debtor's Motion to dismiss the Chapter 13 case.

Additionally, the Trustee seeks the reimbursement of expenses in the amount of $99.50. The expense was incurred as a copy charge for documents provided to Donica.

The Trustee asserts that the services were performed and the expenses were incurred in connection with her duties under § 704 of the Bankruptcy Code, and that she is entitled to a quantum meruit award of fees and costs to compensate her for the services.

### 2. Donica's Application and Supplemental Application

In his original Application, Donica asserts that his firm devoted 49.5 attorney hours at an average rate of $280.45 per hour, and 17.2 paralegal hours at the rate of $100.00 per hour, to this case from August 21, 2006, through October 9, 2006. (Doc. 70). Accordingly, Donica seeks an award of $15,602.50 as compensation for his services, and an additional $716.35 as reimbursement for expenses, for a total award in the amount of $16,318.85.

Donica's time records are attached to the Application as Exhibit B. The time records include the date of each service performed, a description of each service, the amount of time and charge allocated to each service, and the initials of the particular person who performed the service.

The time records reflect that the services provided by Donica include preparing and filing the Objection to the Debtor's exemptions and the Motion to sell the boat free and clear of liens, preparing and filing the Complaint for turnover and for an injunction, evaluating the Debtor's right to commissions and residuals, research regarding the Debtor's conversion to Chapter 13 under the Bankruptcy Abuse Prevention and Consumer Protection Act, preparing for and attending the hearing on the Trustee's Motion to reconvert the case to a Chapter 7, and preparing for and attending the hearing on the Debtor's Motion to Dismiss the Chapter 13 case.

The expenses for which Donica seeks reimbursement primarily arise from copying charges and payment for transcription services.

Donica filed the Application pursuant to § 330, § 331, and § 503(b) of the Bankruptcy Code, and Rule 2016 of the Federal Rules of Bankruptcy Procedure. He contends that the services for which compensation is requested were rendered to and for the benefit of the Trustee, and that the reasonable value of the services and allowable costs totals $16,318.85 under the principles outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *In re First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir. 1977), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); and *In re Bilgutay*, 108 B.R. 333 (Bankr.M.D.Fla. 1989).

Donica subsequently filed a Supplemental Application for Allowance of Compensation and Reimbursement of Expenses. (Doc. 118). In the Supplemental Application, Donica seeks an additional award of $11,692.50 for legal services provided, and $368.60 for expenses incurred, for a total additional award of $12,061.10. The period covered by the Supplemental Application extends from October 18, 2006, through March 21, 2007.

The time records attached to the Supplemental Application reflect that the services performed during the covered period include attending a preliminary hearing on the fee applications, preparing, filing, and attending a hearing on a Motion for Protective Order and a Motion to Strike the Debtor's Motion for Protective Order, attending a deposition of the Debtor, preparing and filing a Trial Memorandum on the Applications for Compensation, attending a deposition taken by the Debtor, and attending the final evidentiary hearing on the Applications for Compensation.

In the Supplemental Application, Donica also deducted the sum of $1,091.50 that had been inadvertently over-billed in his original Application.

Consequently, the aggregate amount requested by Donica in his Application and Supplemental Application, representing both compensation for services rendered and reimbursement of expenses incurred, is $28,379.95.

### 3. The Debtor's Motion for Quantum Meruit Fees

The Debtor filed a Motion to recover the attorney's fees that he has incurred in opposing the Applications filed by the Trustee and Donica. (Doc. 110). The Debtor contends that he was compelled to oppose the fees because they are excessive and unjust, and that he is therefore entitled to recover his fees and costs on a quantum meruit basis. The Debtor acknowledges that no statutory basis exists for the award, but asserts that the Court should exercise its equitable jurisdiction and grant his Motion. (Doc. 110, ¶ 4).

The Motion is supported by the time records maintained by the Debtor's attorney. (Doc. 132). The time records reflect a total amount due of $8,492.00 for the period commencing on October 27, 2006, and ending on March 21, 2007.

The services performed by the Debtor's attorney include attending hearings on the Applications, attending the Debtor's deposition, preparing and filing a Trial Memorandum, taking the depositions of Donica and the Trustee, attending the final hearing on the Fee Applications, and preparing the Motion for Quantum Meruit Fees.

The billing records also reflect expenses incurred by the Debtor's attorney in the amount of $192.00, which is included in the total bill of $8,492.00.

### B. The Objections

The Debtor filed separate Objections to the Applications for Compensation of Donica and the Trustee. (Docs.82, 83).

Essentially, the Debtor contends that the initial § 341 meeting of creditors was conducted in his case on August 17, 2006, and that the Trustee was placed on notice at the meeting that the Debtor did not qualify for relief under Chapter 7 of the Bankruptcy Code. Consequently, the Debtor asserts that the Trustee was obligated to refrain from incurring any additional expenses after August 17, 2006, in connection with administering the Chapter 7 case.

Based on the foregoing, the Debtor contends that the compensation requested by Donica and the Trustee for services performed after August 17, 2006, is excessive and unwarranted.

### Discussion

The primary dispute before the Court relates to the separate Applications filed by the Chapter 7 Trustee and her attorney for fees claimed and costs incurred in connection with the Debtor's bankruptcy case.

### A. Professional fees under § 330

The Debtor initially filed a case under Chapter 7, which was later converted to a

case under Chapter 13, and ultimately dismissed.

Generally, the compensation awarded to a professional in a bankruptcy case is governed by § 330 of the Bankruptcy Code. Section 330(a)(1) provides:

**11 USC § 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–

(A) *reasonable compensation for actual, necessary services rendered* by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(Emphasis supplied). Section 330(a)(3) sets forth the factors that a Court should consider in determining reasonable compensation under § 330(a)(1). The factors include, for example, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C).

The standard has been applied specifically to professionals employed in a Chapter 7 case prior to its conversion to a case under a different chapter. In *In re Washington,* 232 B.R. 814, 816 (Bankr. S.D.Fla.1999), for example, the Court determined:

> This Court agrees with the court in *Collins* that, even upon a conversion to Chapter 13, Chapter 7 trustees and their attorneys should be entitled to compensation for services rendered which benefit the bankruptcy estate, if those services are reasonable and necessary.

*In re Washington,* 232 B.R. at 816(citing *In re Collins,* 210 B.R. 538 (Bankr. N.D.Ohio 1997)). In *Washington,* the Court found that the services provided by the trustee and her attorney produced a benefit to the estate, and awarded fees and costs under the criteria established by § 326 and § 330, even though the trustee had not made any disbursements in the case. *Id.* at 818.

More recently, in *In re Kuhn,* 337 B.R. 668 (Bankr.N.D.Ind.2006), the debtor in a converted chapter 13 case objected to a claim for fees and costs that had been filed by the trustee for services performed in the prior Chapter 7. The debtor asserted that the trustee was not entitled to any compensation for opposing the conversion, since he "should have known" that the conversion would be permitted. *In re Kuhn,* 337 B.R. at 673–74. The Court noted that the trustee had opposed the conversion because of its prejudicial effect on creditors, and concluded:

> The Court holds that the legal services reflected in the compensation requested in claim # 2, together with reimbursement of expenses, were both necessary to the administration of Kuhn's Chapter 7 case, and beneficial at the time at which they were rendered toward the completion of, Kuhn's case. In the context of 11 U.S.C. § 330(a)(4)(A)(ii)(I) and (II), the services and expenses *were* both reasonably likely to benefit the debtor's estate, and necessary to the administration of the case.

*Id.* at 675(Emphasis in original). The trustee's claim for fees and costs was allowed, as adjusted by the Court. *Id.* at 676.

See also, *In re Scott,* 2006 WL 566441, at *2 (Bankr.N.D.Ill.2006)("The correct view, and the view most courts hold ... is that a chapter 7 trustee is entitled to reasonable compensation post-conversion for his pre-conversion services, either explicitly under section 330(a), ... or on a quantum meruit basis."), and *In re Lauria,* 2002 WL 32388348 (Bankr.E.D.Va.).

■ In this case, of course, the Debtor's converted case was ultimately dismissed. In the Order of dismissal, however, the Court expressly retained jurisdiction to determine any compensation claimed by the Trustee and Donica. (Doc. 65). Such retention of jurisdiction is appropriate, since a Bankruptcy Court is obliged to review all aspects of a professional's claim for compensation, even after the dismissal of a case. *In re 5900 Associates, L.L.C.,* 326 B.R. 402, 409–10 (E.D.Mich.2005); In *re Quaker Distributors, Inc.,* 189 B.R. 63, 68 (Bankr.E.D.Pa. 1995).

In light of the general considerations described above, therefore, the Court must determine whether the awards sought by the Trustee and Donica in this case represent "reasonable compensation for actual, necessary services" within the meaning of § 330 of the Bankruptcy Code.

### B. Applying the standard in this case

The Court finds that the Applications of the Trustee and Donica should be approved in the amounts set forth in this Order.

Upon the filing of the bankruptcy petition by the Debtor, the Trustee was required by statute to administer the Chapter 7 estate for the benefit of the estate's creditors. To fulfill her duties, the Trustee and her attorney were required to investigate the Debtor's financial condition in an effort to determine how the interest of the estate's creditors would best be served. In this case, many of the services and investigative efforts performed by the Trustee and her attorney were necessitated by the Debtor's misleading disclosures at the outset of the case.

### 1. The Trustee's duties

■ Section 704 of the Bankruptcy Code sets forth the responsibilities and obligations of the trustee in a Chapter 7 case. The section provides in part:

**11 USC § 704. Duties of trustee**

(a) The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

. . .

(4) investigate the financial affairs of the debtor;

. . .

(6) if advisable, oppose the discharge of the debtor.

. . .

11 U.S.C. § 704(a). Under this section, "trustees are bound to use due diligence in the discharge of their duty to 'collect and reduce to money the property of the estates for which they are trustees' and to secure possession of all the debtor's property and collect all debts." *In re Chicago Art Glass, Inc.,* 155 B.R. 180, 187 (Bankr. N.D.Ill.1993).

■ Additionally, Chapter 7 trustees have a "statutory duty under Code § 704(a) to investigate charges of concealment of assets, fraudulent conduct, and any other wrongdoing by the debtor or other third parties." *In re Dec,* 272 B.R. 218, 228–29 (Bankr.N.D.Ill.2001).

### 2. Investigating the Debtor's financial affairs

In this case, the Debtor voluntarily filed his Chapter 7 petition and submitted to the jurisdiction of the Bankruptcy Court. Upon the filing of the petition, the Chapter 7 Trustee was appointed by the United States trustee pursuant to § 701 of the Bankruptcy Code, and was required to examine the Debtor's financial affairs and perform the duties imposed by § 704.

The initial schedules, financial statements, and statement of financial affairs, all signed by the Debtor "under penalty of perjury," were replete with errors.

On his original Schedule of Current Income, the Debtor stated that he was employed by Annuity Advisors, that he received wages in the amount of $525.00 per month, and that he received "interest and dividends" in the amount of $2,000.00 per month, for a total monthly income of $2,525.00. The Debtor listed stock in Annuity Advisors, Inc. on his Schedule of Personal Property as having a value of "zero."

Further, and perhaps more significantly, the Debtor answered "none" to all of the questions on his Statement of Financial Affairs (SOFA), with the exception of the first question regarding his income, and his answer to question number 1 was inaccurate.

At his § 341 meeting of creditors on August 17, 2006, the Debtor acknowledged that his Schedules and SOFA contained numerous errors and omissions. (Trustee's Exhibit 4).

As a result of the Debtor's testimony and the information developed from the schedules, the Trustee or her attorney took the following action in the week after the § 341 meeting:

1. Provided notice of the recovery of assets and requested a claims bar date. (Doc. 9).

2. Provided notice of a continued creditors' meeting. (Doc. 10).

3. Objected to the Debtor's Claim of Exemptions. (Doc. 11).

4. Filed an emergency Motion to sell a boat owned by the Debtor. (Doc. 12).

5. Filed a Complaint against the Debtor for Declaratory Judgment, Turnover of Property to the Estate, and Injunction. (Adv. No. 06–374).

In the adversary proceeding, the Trustee primarily requested a determination of the extent to which the stock and receivables associated with Annuity Advisors, Inc. was property of the estate.

On August 27, 2006, ten days after the meeting of creditors, the Debtor filed an Amended Schedule of Current Income. (Doc. 25). In the Amended Schedule I, the Debtor disclosed that he received wages or salary in the amount of $867.00 per month from Annuity Advisors, Inc., and that he received income from the operation of the business in the amount of $13,401.00 per month, for a total monthly income of $14,101.00.

Consequently, the income reflected on his Amended Schedule exceeded the income disclosed on his original Schedule by the sum of $11,576.00 per month.

On August 28, 2006, eleven days after the meeting of creditors, the Debtor filed an Amended Statement of Financial Affairs. (Doc. 28). The information disclosed in the Amended SOFA includes the following:

1. In 2006, the Debtor received income of $116,249.00 from Next Financial Group. In 2005, the Debtor received income of $218,997.30 from Next Financial Group, and income of $25,000.00 from Annuity Advisors, Inc. In 2004, the

Debtor received income of $336,726.54 from Next Financial Group, income of $237,330.01 from Epix I, Inc., income of $30,000.00 from Annuity Advisors, Inc., and income of $28,636.46 from other insurance companies. (Question 1).

2. In 2006, the Debtor had cashed a 401–K Plan and received the sum of $46,826.36. In 2004, the Debtor had sold an office condominium suite and received net proceeds in the amount of $58,344.94. (Question 2).

3. The Debtor was or had been involved in a divorce proceeding in the Circuit Court for Hillsborough County, Florida, as well as two other actions involving his estranged wife in Pinellas County, Florida. (Question 4).

4. A Chrysler minivan had been repossessed in July of 2006. (Question 5).

5. The Debtor had closed two checking accounts at Wachovia Bank in 2005 and 2006. (Question 11).

6. The Debtor is the sole shareholder of Annuity Advisors, Inc., and was formerly the General Partner of a Florida Limited Partnership known as One Source Properties, LP, and the sole shareholder of a corporation known as One Source Financial Services, Inc. (Question 18).

Other corrections on the Amended SOFA consist of the disclosure of certain payments to creditors, the disclosure of certain transfers to his estranged wife, and the disclosure of a safe deposit box in the Debtor's name.

The information contained in the Amended SOFA is material to the Trustee's evaluation of the bankruptcy case. It is clear that the sworn schedules and SOFA initially filed by the Debtor did not present an accurate picture of his financial affairs.

It is also clear that the information provided separately to the Trustee was inadequate to cure the deficiencies in the sworn disclosures. At the trial of this matter, the Debtor submitted two packages of documents which had been delivered to the Trustee in response to her requests for information. (Debtor's Exhibits 1 and 2). According to the Debtor, the documents fully disclosed his receipt of a $15,000.00 commission shortly before the bankruptcy petition was filed, for example, as well as his disposition of a $24,000.00 Certificate of Deposit that had been cashed approximately three months before the filing. (Transcript, pp. 174–76, 182–83).

The Court has reviewed the documents furnished to the Trustee, and also the Debtor's testimony regarding their content, and finds that the packages do not meaningfully disclose the relevant transactions in which the Debtor was involved. The transactions were not conspicuous in the documentation, and were never included in any amendments to the Debtor's schedules.

In view of the inconsistencies in the disclosures, the Court finds that the Trustee was justified in investigating the Debtor's financial condition pursuant to her duties under § 704 of the Bankruptcy Code, and further finds that the services related to the investigation and collection of assets were necessary to the administration of the case.

### 3. Opposing the Debtor's conversion or dismissal

█ The Court also finds that the services performed by the Trustee in opposition to the Debtor's motion to convert and motion to dismiss are compensable in this case.

First, the Trustee was not required to terminate her investigation on the basis of an Amended Statement of Current Month-

ly Income and Means Test Calculation filed by the Debtor on September 12, 2006. (Doc. 39). In fact, the Debtor contends that the Trustee was placed on notice as early as the § 341 meeting that his monthly income exceeded the amounts set forth in § 707 of the Bankruptcy Code, and that he therefore did not qualify for relief under Chapter 7.

The Trustee's obligations under § 704, however, did not end with her receipt of conflicting information regarding the Debtor's income. As the Trustee testified at trial, there was "no resemblance" between the original schedule of income and the amended schedule of income filed by the Debtor, and the two sworn statements could not be reconciled. (Transcript, p. 92). The Trustee also testified that the amended schedule of income was inconsistent with the Debtor's testimony at the § 341 meeting. (Transcript, p. 93).

In other words, the Trustee was faced with conflicting reports of the Debtor's income, and the conflict was created solely by the Debtor.

Under these circumstances, the Court finds that the Trustee was obligated to continue her investigative efforts, and to determine whether the Debtor had intentionally manipulated the figures that he had provided.

■ Second, it appears that the Debtor may not have been entitled to voluntarily dismiss his bankruptcy case if he had filed a motion requesting dismissal of the Chapter 7 case shortly after the creditors meeting. "While a debtor may voluntarily choose to place himself in bankruptcy, he does not enjoy the same discretion to withdraw his case once it has been commenced." *In re Klein,* 39 B.R. 530, 532 (Bankr.E.D.N.Y.1984)(quoted in *In re Tur-*

*pen,* 244 B.R. 431, 434 (8th Cir. BAP 2000)).

■ Further, the "dismissal of a case after it has appeared that the debtors failed to account honestly for their assets should not be permitted because such a failure indicates the likelihood of further questionable practices to the detriment of creditors." *In re Turpen,* 244 B.R. at 435. See also *In re Boyce,* 2006 WL 3061633, at *4 (E.D.Pa.2006)(The Court denied a debtor's motion to dismiss since she had "voluntarily sought the protections and burdens of the bankruptcy system," and subsequently "misrepresented her financial condition by not fully disclosing assets and other relevant information.")

In this case, of course, the Debtor did not initially seek the dismissal of his Chapter 7 case. Instead, he first converted his case to a Chapter 13, and then immediately moved to dismiss the Chapter 13 case under § 1307 of the Bankruptcy Code. The Chapter 13 case ultimately was dismissed, over the Chapter 7 Trustee's objection.

Even though he successfully dismissed his bankruptcy case, however, the Debtor should be required to pay the costs associated with invoking the jurisdiction of the Bankruptcy Court. Specifically, the Debtor should be responsible for such costs because of his initial lack of candor, and also in consideration of the estate's creditors whose rights were delayed while the case was pending.

In the Debtor's original Schedule F, he listed unsecured creditors holding claims in the total amount of $146,318.00. In his Amended Schedule F filed on September 12, 2006, the Debtor listed unsecured creditors holding claims in the total amount of $80,443.00. (Doc. 39). Although the two amounts differ significantly, it appears that creditors exist who possessed rights against the Debtor. In fact, eight Proofs of Claim had been filed in the case at the time that it was dismissed, and the bar

date for filing such claims had not yet expired.

The presence of a body of unsecured creditors with claims in the case is important because it evidences the Trustee's continuing obligation to administer the estate. In other words, the Trustee was bound to oppose the dismissal of the case if it appeared that the claims of creditors would not be protected outside of bankruptcy. *In re Turpen*, 244 B.R. at 435.

 Finally, the fact that the case was ultimately dismissed does not render the Trustee's efforts unnecessary. Section 330 of the Bankruptcy Code "requires only that the services in question had a reasonable likelihood of benefiting the estate at the time they were provided, not that they actually did provide a benefit." *In re Boyce*, 2006 WL 3061633, at *3(citing *In re American Metallurgical Products, Inc.*, 228 B.R. 146, 159 (Bankr.W.D.Pa.1998)).

The Debtor voluntarily commenced this bankruptcy case, and initially provided misleading information on his schedules and SOFA. The Trustee objected to the Debtor's claim of exemptions, demanded the turnover of a tax refund, filed a motion to sell the Debtor's boat, and provided notice to the Court of the recovery of assets. Creditors exist in the case who have asserted substantial claims against the estate.

Under these circumstances, the Court finds that the services performed by the Trustee and Donica in opposing the dismissal of the case are compensable. The Debtor should not be permitted to invoke the jurisdiction of the Bankruptcy Court, provide inaccurate information, and then escape the consequences of the filing without paying the costs associated with the proceeding.

## C. The amount of compensation awarded

The Court has found that the Trustee and Donica are entitled to compensation for their efforts in investigating the Debtor's financial condition and fulfilling the duties prescribed by § 704 of the Bankruptcy Code. Consequently, the Court must next determine the specific amount that should be awarded to the Trustee and Donica under § 330 as "reasonable compensation for actual, necessary services rendered."

 "Bankruptcy courts have broad discretion in determining the amount of fees awarded to professionals as compensation." *In re Omine*, 329 B.R. 343, 349 (Bankr.M.D.Fla.2005)(citing *In re First Colonial v. Baddock*, 544 F.2d 1291,-1298 (5th Cir.1977)). Nevertheless, courts have a duty to examine each fee request within the guidelines set forth in § 330.

### 1. The Trustee

 In this case, the Court finds that the Trustee's fees and costs should be approved in the total amount requested of $4,819.50. The amount is reasonable for services that extended for a period of more than six weeks, in a case that required the Trustee to independently obtain the Debtor's tax records, evaluate the Debtor's exemptions, arrange for the proposed sale of a boat, and respond to the Debtor's motion to convert to a Chapter 13, among other issues. The Trustee has approximately ten years of experience as a Chapter 7 Trustee (Transcript, p. 66), and the Court finds that the specific charges in the Trustee's itemization are reasonable.

### 2. Donica

 The fees sought by Donica in his original application totaled the approximate sum of $15,227.35. The fees sought

in the Supplemental Application totaled the sum of $11,692.50.

The Court is satisfied that the services provided early in the case were necessary to assist the Trustee in the exercise of her duties, for all of the reasons set forth previously in this Opinion. Further, the Court acknowledges Donica's ability to respond quickly to the Trustee's request for assistance.

After dismissal of the case, the services were required to respond to the Debtor's objections to the fees of the Trustee and Donica, and to prepare for the final hearing on the applications for compensation in the case. The Court recognizes that Donica was compelled respond to the objections and to prepare for the hearing that was scheduled on the fee applications. The Court also recognizes that the issues surrounding the fee applications were vigorously litigated by all of the parties. Further, the Court recognizes the importance of compensating Trustees and their counsel for work performed in difficult Chapter 7 cases, so that competent professionals are encouraged to accept the employment.

Additionally, the Court notes that the time expended by Donica responding to the Debtor's objections to the applications for compensation, 35.5 hours (Doc, 118), is less than the time expended by the Debtor's attorney in objecting to the applications for compensation, 41.5 hours (Doc. 132).

Consequently, it is appropriate to approve the fees and costs requested by Donica in his Application and Supplemental Application.

### D. The Debtor's Motion

Finally, the Debtor filed a Motion to recover the attorney's fees that he has incurred in opposing the Applications filed by the Trustee and Donica. (Doc. 110).

The Debtor acknowledges that no statutory basis exists for his request, and therefore seeks the award on a quantum meruit basis as a matter of equity.

The Trustee filed a Motion to Strike the Debtor's Motion, which shall be treated as a response and objection to the Motion.

For the reasons discussed above, the Court will not exercise its equitable jurisdiction in favor of the Debtor. The Motion should be denied.

### Conclusion

The Application for Administrative Fees (Quantum Meruit Compensation for Chapter 7 Trustee), and the Application and Supplemental Application for Allowance of Compensation and Reimbursement of Expenses by Counsel for Trustee, should be approved in the amounts set forth in this Order.

In reaching this conclusion, the Court has considered the duties of the Trustee under § 704, the misleading and incomplete information provided by the Debtor at the inception of this case, and the Trustee's obligation to administer the estate for the benefit of the Debtor's creditors. Based on all of the circumstances, the Court finds that the Trustee and her counsel are entitled to "reasonable compensation for actual, necessary services" within the meaning of § 330 of the Bankruptcy Code.

Based on the same circumstances, the Court also finds that the Motion for Quantum Meruit Fees filed by the Debtor should be denied.

Accordingly:

**IT IS ORDERED** that:

1. The Application for Administrative Fees (Quantum Meruit Compensation for Chapter 7 Trustee) filed by the Trustee, Andrea P. Bauman, is approved in the total amount requested of $4,819.50.

2. The Debtor, Jeffrey Jankowski, is directed to pay to Andrea P. Bauman, as Trustee, the sum of $4,819.50 within thirty (30) days of the date of this Order.

3. The Application and Supplemental Application for Allowance of Compensation and Reimbursement of Expenses by Counsel for Trustee, filed by Herbert R. Donica, of the Donica Law Firm, P.A., are approved in the total amount of $28,379.95.

4. The Debtor, Jeffrey Jankowski, is directed to pay to Herbert R. Donica, of the Donica Law Firm, P.A., the sum of $28,379.95 within thirty (30) days of the date of this Order.

5. The Former Debtor's Motion for Quantum Meruit Fees Incurred in Opposition to the Fee Applications of Trustee and Trustee's Counsel is denied.